AO 241 (Rev. 5/85)

PETITION UNDER 28 USC § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District MASSACHUSETTS | |
|---|---|---|
| Name JOSEPH DELONG | Prisoner No. W-66401 | Case No. |

Place of Confinement

OLD COLONY CORRECTIONAL CENTER, ONE ADMINISTRATION ROAD, BRIDGEWATER, MASSACHUSETTS 02324

| Name of Petitioner (include name under which convicted) | Name of Respondent (authorized person having custody of petitioner) |
|---|---|
| JOSEPH DELONG | V. BERNARD BRADY, ACTING SUPERINTENDENT OLD COLONY CORRECTIONAL CENTER |

The Attorney General of the State of: MASSACHUSETTS, THOMAS F. REILLY

MAGISTRATE JUDGE Sorokin

## PETITION

1. Name and location of court which entered the judgment of conviction under attack  SUFFOLK COUNTY SUPERIOR COURT, 90 DEVONSHIRE STREET, BOSTON, MA 02109

2. Date of judgment of conviction  AUGUST 25, 1999

3. Length of sentence  TEN TO FIFTEEN YEARS, FROM AND AFTER SENTENCE PREVIOUSLY IMPOSED IN MIDDLESEX COUNTY.

4. Nature of offense involved (all counts)  ARMED ROBBERY, G.L. c. 265, § 17.1

5. What was your plea? (Check one)
   (a) Not guilty  ☒
   (b) Guilty  ☐
   (c) Nolo contendere  ☐
   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:
   NOT APPLICABLE

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury  ☒
   (b) Judge only  ☐

7. Did you testify at the trial?
   Yes ☐ No ☒

8. Did you appeal from the judgment of conviction?
   Yes ☒ No ☐

(2)

AO 241 (Rev. 5/85)

9. If you did appeal, answer the following:

   (a) Name of court __MASSACHUSETTS APPEALS COURT__

   (b) Result __JUDGMENT OF CONVICTION AFFIRMED__

   (c) Date of result and citation, if known __February 26, 2004, 803 N.E.2d 1274, 60 Mass.App. Ct. 528 (2004).__

   (d) Grounds raised

   __SEE ATTACHMENT 9(d)(1-7)__

   (e) If you sought further review of the decision on appeal by a higher state court, please answer the following:

   (1) Name of court __MASSACHUSETTS SUPREME JUDICIAL COURT__

   (2) Result __FURTHER APPELLATE REVIEW DENIED__

   (3) Date of result and citation, if known __JUNE 30, 2004, FAR No. SJC-14016__

   (4) Grounds raised __(i) The illegal search of Petitioner's automobile; (ii) The "other bad acts" evidence should not have been admitted against Petitioner at trial; and, (iii) The failure to secure two critical unbiased alibi witnesses. (the same issues raised before the Massachusetts Appeals Court - see 9(d)(1-7)).__

   (f) If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

   (1) Name of court __NONE - NOT APPLICABLE__

   (2) Result __NONE - NOT APPLICABLE__

   (3) Date of result and citation, if known __NONE - NOT APPLICABLE__

   (4) Grounds raised __NONE - NOT APPLICABLE__

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?
    Yes ☒ No ☐

11. If your answer to 10 was "yes," give the following information:

    (a) (1) Name of court __SUFFOLK SUPERIOR COURT__

        (2) Nature of proceeding __MOTION FOR A NEW TRIAL, MASS.R.CRIM.P. 30(b) (filed prior to direct appeal)__

        (3) Grounds raised __(i) The trial judge erred in admitting "other bad acts" evidence against the Petitioner; (ii) Trial counsel was ineffective in failing to__

(3)

AO 241 (Rev. 5/85)

> move to suppress evidence seized from the Petitioner's automobile; and,
>
> (iii) Trial counsel was ineffective in failing to secure two additional
>
> alibi witnesses who were not related to the Petitioner. See ATT 9(d)(1-7).

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐  No ☒

(5) Result  MOTION FOR NEW TRIAL DENIED

(6) Date of result  MAY 29, 2003

(b) As to any second petition, application or motion give the same information:

(1) Name of court  SUFFOLK SUPERIOR COURT

(2) Nature of proceeding  MOTION FOR NEW TRIAL, MASS.R.CRIM.P. 30(b)

(3) Grounds raised  SEE ATTACHMENT 11(b)(3)

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐  No ☐  ACTION IS PENDING

(5) Result  NOT APPLICABLE - ACTION IS PENDING

(6) Date of result  NOT APPLICABLE - ACTION IS PENDING

(c) Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?
(1) First petition, etc.    Yes ☒  No ☐  FAR No. SJC-14016
(2) Second petition, etc.   Yes ☐  No ☐  NOT APPLICABLE - ACTION IS PENDING

(d) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

NOT APPLICABLE

12. State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting same.
   CAUTION: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

(4)

ATTACHMENT 11(b)(3)
PAGE 4A

   I. The introduction of hearsay evidence through the testimony of a police detective, that a witness who did not testify at trial had positively identified the Petitioner as the robber from a photographic array, violated Petitioner's rights to confront his accuser, to a fair trial before an impartial jury and, therefore, to due process of law.

   II. The failure to challenge the trial court's decision denying dismissal of the indictment, which was procured by the presentation of highly prejudicial evidence to the Grand Jury, demonstrated ineffective assistance of direct appellate counsel in that said failure violated Petitioner's right to due process of law under the doctrine of fundamental fairness.

   III. The failure to challenge the introduction of opinion testimony of a police detective that the Petitioner was the individual depicted in the surveillance videotape of the robbery, when identification was the central issue in the case at bar and the witness was in no better position than the jurors to draw that conclusion, demonstrated ineffective assistance of trial and direct appellate counsel in that said failure violated the Petitioner's rights to a fair trial before an impartial jury and, therefore, to due process of law.

   IV. The failure to investigate and/or fully exploit that a key government witness had identified someone other than the Petitioner as the robber from the initial photographic array prepared by the police demonstrated ineffective assistance of trial and direct appellate counsel in that said failure violated the Petitioner's rights to a fair trial before an impartial jury and, therefore, to due process of law.

   V. The failure to procure a transcript of the testimony of several witnesses who had testified in a previous trial held in another jurisdiction for impeachment purposes, where said prior testimony diverged significantly from that given by those witnesses in the instant case on the issue of identification of the robber, demonstrated ineffective assistance of trial and direct appellate counsel in that said failure deprived Petitioner of a fair trial before an impartial jury and, therefore, to due process of law.

   VI. The failure to investigate the variance between the actual travel times and/or distances between the Petitioner's home and/or work place to the scene of the robbery, to those travel times and/or distances testified to by the prosecution's police witness, demonstrated ineffective assistance of trial and direct appellate counsel in that said failure deprived Petitioner of a fair trial before an impartial jury and, therefore, to due process of law.

   VII. The failure to object, or argue prior to direct appeal, to the trial judge's failure to give a jury instruction regarding the possibility of the prosecution's witnesses' "honest but mistaken" identification of the Petitioner as the robber, where some of the witnesses had previously given testimony regarding identification that diverged significantly from that given at trial on the issue of identification, demonstrated ineffective assistance of trial and direct appellate counsel in that said failure deprived the Petitioner of a fair trial before an impartial jury and, therefore, to due process of law.

AO 241 (Rev. 5/85)

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted your state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.
(b) Conviction obtained by use of coerced confession.
(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
(e) Conviction obtained by a violation of the privilege against self-incrimination.
(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
(g) Conviction obtained by a violation of the protection against double jeopardy.
(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.
(i) Denial of effective assistance of counsel.
(j) Denial of right of appeal.

A. Ground one: Petitioner's rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution were violated by the State.

Supporting FACTS (state *briefly* without citing cases or law) The introduction of evidence of other crimes for its bearing on identification, where the similarities between the crimes were not sufficiently striking to be admissible on the issue of identification, deprived Petitioner of a fair trial before an impartial jury in violation of due process of law.

B. Ground two: Petitioner's rights under the Fourth, Sixth and Fourteenth Amendments to the United States Constitution were violated by the State.

Supporting FACTS (state *briefly* without citing cases or law): The failure to move to suppress incriminating evidence, seized without a warrant in the course of a search that did not fall within any exception to the warrant requirement, demonstrated ineffective assistance of trial counsel in the it deprived Petitioner of a fair trial before an impartial jury in violation of due process of law.

AO 241 (Rev. 5/85)

C. Ground three: Petitioner's rights under the Sixth and Fourteenth Amendments to the United States Constitution were violated by the State.

Supporting FACTS (state *briefly* without citing cases or law): The failure to secure the presence at trial of two additional alibi witnesses, who were not related to the petitioner and were therefore otherwise disinterested, and who could have corroborated the testimony of Petitioner's wife regarding his alibi defense, demonstrated ineffective assistance of trial counsel in that Petitioner was deprived of a fair trial before an impartial jury in violation of due process of law.

D. Ground four: Petitioner's rights under the Sixth and Fourteenth Amendments to the United States Constitution were violated by the State.

Supporting FACTS (state *briefly* without citing cases or law): The introduction of hearsay evidence through the testimony of a police detective, that a witness who did not testify at trial had positively identified the Petitioner as the robber from a photographic array, violated Petitioner's rights to confrontation, a fair trial before an impartial jury and, therefore, to due process of law.

-- SEE ATTACHMENT 12E THROUGH 12J FOR ADDITIONAL GROUNDS --

13. If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them: Grounds 12D through 12J have not been previously addressed in any other court, state or federal. Ground 12D is based on recent case law, Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354 (2004), and has been incorporated with Grounds 12E through 12J, which are grounded on ineffective assistance of counsel. Grounds 12D through 12J are presently under state review.

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?
    Yes ☒   No ☐

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:
    (a) At preliminary hearing   Not applicable

    (b) At arraignment and plea   Daniel Beck -- for arraignment purposes only, 52 Western Ave., Cambridge, MA 02139, (617) 354-7333

(6)

ATTACHMENT 12E THROUGH 12J
PAGE 6A

E. <u>Ground five</u>: Petitioner's rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution were violated by the State.

<u>Supporting Facts</u>: The failure to challenge the trial court's decision denying dismissal of the Indictment, which was procured by the presentation of highly prejudicial evidence to the Grand Jury, demonstrated ineffective assistance of direct appellate counsel in that said failure violated Petitioner's right to due process of law under the doctrine of fundamental fairness.

F. <u>Ground six</u>: Petitioner's rights under the Sixth and Fourteenth Amendments to the United States Constitution were violated by the State.

<u>Supporting Facts</u>: The failure to challenge the introduction of opinion testimony of a police officer that the Petitioner was the individual depicted in the surveillance videotape of the robbery, when identification was the central issue in the case and the witness was in no better position than the jurors to draw that conclusion, demonstrated ineffective assistance of trial and direct appellate counsel in that said failure violated Petitioner's rights to a fair trial before an impartial jury and, therefore, to due process of law.

G. <u>Ground seven</u>: Petitioner's rights under the Sixth and Fourteenth Amendments to the United States Constitution were violated by the State.

<u>Supporting Facts</u>: The failure to investigate and/or fully exploit that a key government witness had identified someone other than the Petitioner as the robber from the initial photographic array prepared by the police demonstrated ineffective assistance of counsel at trial and on direct appeal in that said failure deprived the Petitioner of a fair trial before an impartial jury and, therefore, to due process of law.

H. <u>Ground eight</u>: Petitioner's rights under the Sixth and Fourteenth Amendments to the United States Constitution were violated by the State.

<u>Supporting Facts</u>: The failure to procure a transcript of the testimony of several prosecution witnesses who had testified in a previous trial in another jurisdiction for impeachment purposes, where said prior testimony diverged significantly from that given by those witnesses in the instant case on the issue of identification of the robber, demonstrated ineffective assistance of trial and direct appellate counsel in that said failure deprived Petitioner of a fair trial before an impartial jury and, therefore, to due process of law.

ATTACHMENT 12E THROUGH 12J
PAGE 6B

I. Ground nine: Petitioner's rights under the Sixth and Fourteenth Amendments to the United States Constitution were violated by the State.

Supporting Facts: The failure to investigate the variance between the actual travel times and/or distances between Petitioner's home and/or workplace to the scene of the robbery, to those travel times and/or distances testified to by the prosecution's police witness, demonstrated ineffective assistance of trial and direct appellate counsel in that said failure deprived Petitioner of a fair trial before an impartial jury and, therefore, to due process of law.

J. Ground ten: Petitioner's rights under the Sixth and Fourteenth Amendments to the United States Constitution were violated by the State.

Supporting Facts: The failure to object, or argue prior to direct appeal, regarding the trial judge's failure to give a jury instruction concerning the possibility of the prosecution's witnesses' "honest but mistaken" identification of the Petitioner as the robber, where some of the witnesses had previously given testimony on identification that diverged significantly from that given at trial on the issue of identification, demonstrated ineffective assistance of trial and direct appellate counsel in that said failure deprived the Petitioner of a fair trial before an impartial jury and, therefore, to due process of law.

AO 241 (Rev. 5/85)

    (c) At trial  ROBERT W. NELSON, JR., <sup>C</sup>/o NORFOLK COUNTY DISTRICT ATTY'S OFFICE, 45 SHAUMUT ROAD, CANTON, MA 02021

    (d) At sentencing  ROBERT W. NELSON, JR.

    (e) On appeal  THOMAS C. FOLEY, POST OFFICE BOX 2187, SOUTH HAMILTON, MASSACHUSETTS 01982

    (f) In any post-conviction proceeding  THOMAS C. FOLEY

    (g) On appeal from any adverse ruling in a post-conviction proceeding  THOMAS C. FOLEY

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
Yes ☐  No ☒

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐  No ☒
    (a) If so, give name and location of court which imposed sentence to be served in the future:  NOT APPLICABLE

    (b) Give date and length of the above sentence:  NOT APPLICABLE

    (c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ☐  No ☐    NOT APPLICABLE

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

_6/20/05_
(date)

_Joseph DeJong_
Signature of Petitioner

(7)

**1274** Mass.    **803 NORTH EASTERN REPORTER, 2d SERIES**

APPENDIX TO THE COURT'S MAJORITY AND DISSENTING OPINIONS.—Continued

*Interrogatory No. 3*

"Please identify the 'sources' referenced in Boston Herald articles (including, but not limited to, articles published on September 2, 3, 4 and 22, 1999) concerning Edward Wojcik and/or the Lottery's Fairhaven offices. Please include:

"(a) the name and address of each source;

"(b) the dates of the communication with each source; and

"(c) the substance of the communications."

*Silberman Answer to Interrogatory No. 3*

"Silberman objects to Interrogatory No. 3 on the grounds that it calls for the disclosure of confidential information."

*Macero Answer to Interrogatory No. 3*

"Mr. Macero objects to Interrogatory No. 3 on the grounds that it is duplicative of Interrogatory No. 2 and calls for the disclosure of confidential information. Without waiving these objections, Mr. Macero refers to his Answer to Interrogatory No. 2."

---

60 Mass.App.Ct. 528

L528COMMONWEALTH

v.

Joseph DELONG.

No. 00-P-1485.

Appeals Court of Massachusetts,

Suffolk.

Argued Oct. 1, 2003.

Decided Feb. 26, 2004.

**Background:** Defendant was convicted following jury trial in Superior Court, Suffolk County, Elizabeth B. Donovan, J., of armed robbery of a supermarket, and defendant's new trial motion was denied. Defendant appealed.

**Holdings:** The Appeals Court, Mason, J., held that:

(1) evidence of two prior robberies showed distinctive pattern or scheme and thus was admissible prior bad act evidence;

(2) probative value of prior bad acts evidence was not outweighed by its potential for unfair prejudice;

(3) police could lawfully impound defendant's car and conduct inventory search; and

(4) counsel's failure to obtain presence of two additional alibi witnesses did not deprive the defendant of an otherwise available, substantial ground of defense.

Affirmed.

Berry, J., dissented with opinion.

**1. Criminal Law** ⟺369.15, 371(1, 12), 372(1)

A trial judge may not admit evidence of acts committed prior to a charged offense to prove the bad character or criminal propensity of the accused, but may admit such evidence if it is relevant to establish a common scheme, pattern of operation, absence of mistake, identity, intent, or motive.

**2. Criminal Law** ⟺369.2(1)

To be sufficiently probative, evidence of prior bad acts must be connected with the facts of the case and not be too remote in time.

**3. Criminal Law** ⟺369.15

Before evidence of prior bad acts may be admitted to show identity the Commonwealth must show that the prior events and the circumstances of the crime charged have such similarities as to be meaningfully distinctive; there must be a uniqueness of technique, a distinctiveness, or a particularly distinguishing pattern of conduct common to the current and former incidents to warrant the admission of evidence of prior bad acts as tending to prove that the defendant was the person who committed the crime charged.

**4. Criminal Law** ⟺338(7), 369.2(1)

The preliminary determinations about whether to admit prior bad acts evidence are committed to the sound discretion of the trial judge, who must also consider whether the probative value of the evidence is outweighed by its prejudicial effect.

**5. Criminal Law** ⟺1153(1)

Trial judge's preliminary determinations on prior bad acts evidence and whether the probative value of the evidence is outweighed by its prejudicial effect will be upheld on appeal absent palpable error.

**6. Criminal Law** ⟺372(14)

Evidence of two prior robberies showed a distinctive pattern or scheme and thus was admissible prior bad act evidence at defendant's trial for robbery; evidence showed that all three robberies involved particular chain of markets located within a few miles of each other and occurred within three days of each other, that in each instance robber was dressed in sweat clothes, hat, and sunglasses, accosted a victim near store's courtesy booth, stated he had a gun which he failed to display, and demanded money he was taking be put in a bag, and robber remained calm during each robbery.

**7. Criminal Law** ⟺372(14), 673(5)

Probative value of prior bad acts evidence, consisting of two other robberies sharing distinctive pattern, was not out-

---

**COM. v. DELONG**    Mass. **1275**
Cite as 803 N.E.2d 1274 (Mass.App.Ct. 2004)

weighed by its potential for unfair prejudice at defendant's robbery trial, although evidence was prejudicial; evidence was not unfairly prejudicial, and judge specifically instructed jury that evidence of other robberies was not proof defendant had committed them or character evidence, but was admissible "solely on the limited issue of identification," and then only if the crimes were "not too remote in time."

**8. Searches and Seizures** ⟺66

Police could lawfully impound robbery defendant's car and conduct inventory search, where defendant was not accompanied by his wife or any other person who might have taken custody of his car when he was arrested outside market, and defendant's car was parked in a private parking lot that was posted with signs limiting parking to business customers of the laundromat and other nearby businesses, and private towing was real possibility if police did not impound car.

**9. Criminal Law** ⟺920

To obtain a new trial on the ground of ineffective assistance of counsel, a defendant must show serious incompetency, inefficiency, or inattention on the part of his trial counsel that likely deprived the defendant of an otherwise available, substantial ground of defense. U.S.C.A. Const Amend. 6.

**10. Criminal Law** ⟺641.13(6)

Defense counsel's failure to obtain presence of two additional alibi witnesses did not deprive the defendant of an otherwise available, substantial ground of defense at robbery trial, and thus was not ineffective assistance of counsel; neither witness could say definitely when defendant and his wife had left restaurant, testimony was cumulative of testimony of defendant's wife, and testimony pertained to prior bad acts evidence rather than to



ATTACHMENT 9(d)(1)


**1278** Mass.   803 NORTH EASTERN REPORTER, 2d SERIES

witnesses to the Brighton robbery, including Beaton, Lewis, LaMonica, and Wilson. Each of them independently identified the defendant as the person who had robbed the Brighton store.

At trial, Beaton, Lewis, and LaMonica, Detectives Mahoney and Anderson, and Officer Lopez all testified to the foregoing events. The Commonwealth also called as witnesses Barbara Sarnie, a service representative employed at the Star Market in the Chestnut Hill section of Newton, and Philip Ferrante, the manager of the Star Market in the Auburndale section of Newton. Sarnie testified that, at about 10:00 A.M. on the morning of January 14, 1998, a man wearing a black hooded-type hat with some sort of attached scarf wrapped around his mouth, dark sunglasses, a sweatshirt, and dark pants, had approached her at the courtesy booth of the Chestnut Hill store and stated, "This is a robbery and I have a gun. And I want all the money in your drawer." Sarnie further testified that, in response to the man's demands, she had taken money out of a drawer and placed it in a bag the man had given her, and the robber had then turned around and walked out of the store. Sarnie also testified that she was subsequently shown the same photographic array that had been shown to the witnesses to the Brighton robbery, and had identified the defendant as the person who had robbed her.

Ferrante testified that, at about 8:50 P.M. on the evening of January 14, 1998, he had gone to the courtesy booth at the front of the Auburndale store in response to a page by a clerk indicating that someone wanted to see him. Ferrante further testified that, as he approached the booth, he noticed a man standing there who was wearing dark sunglasses, a dark sweatshirt, and dark sweatpants. Ferrante asked the man if he could help him and the man had responded by asking him if he was the manager. When Ferrante responded that he was, the man had stated to him that he had a ".45" in his sweatshirt, and ordered Ferrante "to take me to the safe." In response to this demand, Ferrante had taken the man to the money room behind the courtesy desk and, together with a clerk who was there, had put money into a bag. The man had then took the bag and left the store with Ferrante following him out.

Unlike Sarnie, Ferrante did not testify that he had been shown a photographic array. Nevertheless, he identified the defendant at trial as the person who had robbed him and also testified that he had previously made such an identification at a prior hearing.

The Commonwealth also called as a witness Nicholas Geanmaris, a loss prevention specialist employed by Star Market. Geanmaris identified a series of photographs taken from a videotape made by a security camera of the Brighton robbery, which were introduced in evidence, and also videotapes of the Chestnut Hill and Auburndale robberies, as well as the incident occurring at the Newtonville Star Market on January 19, 1998, which were also introduced in evidence. Geanmaris also identified two photographs taken from a videotape made by a security camera at the Brighton store at about 8:15 P.M. on the evening of January 14, 1998, which were introduced in evidence. Although the photographs were "fuzzy in appearance," Geanmaris testified that they showed an individual in the produce area of the Brighton store who appeared to be dressed in dark clothing, a hood, and sunglasses, and who also appeared to have the same physique as the individual shown in the videotape that was made of the robbery of the Auburndale store occurring at

---

COM. v. DELONG   Mass.   **1279**
Cite as 803 N.E.2d 1274 (Mass.App.Ct. 2004)

8:50 P.M. on the evening of January 14, 1998.

Finally, the Commonwealth presented evidence that the Brighton Star Market was located only one and six-tenths miles from the defendant's home on Quimby Street in Brighton, and that the Chestnut Hill and Auburndale stores were located only a few miles from the Brighton store.

The defendant's defense was misidentification, and in addition to bringing out inconsistencies in the testimony of the Commonwealth's witnesses, he called several alibi witnesses. Specifically, he called his mother, Nancy Blickenstall, his grandmother, Jeanette DeStasio, and his grandmother's long-time friend, Charles Russo, all of whom testified that the defendant had been at his mother's house in Brighton at or about 10:00 A.M. on January 17, 1998, when the robbery of the Brighton store had occurred. He also called his wife, Ellen Delong, who testified that she and the defendant had had dinner at a Ground Round restaurant in Waltham on the evening of January 14, 1998, when the robbery of the Auburndale store had occurred, and had remained there until some time after 8:00 P.M. Finally, the defendant called Steven Molineaux and John Ryan, both of whom testified that the defendant had been at work at a construction site in Boston on the morning of January 14, 1998, when the robbery of the Chestnut Hill store had occurred, and had remained there until approximately 10:00 A.M.

1. *Admission of prior bad acts evidence.* The defendant claims that the judge erred in admitting evidence pertaining to the prior Hill and Auburndale robberies at the Chestnut Hill and Auburndale stores because the Commonwealth failed to demonstrate that those prior robberies and the crime charged had "such similarities as to be meaningfully distinctive." *Commonwealth v. Brusgulis*, 406 Mass. 501, 505, 548 N.E.2d 1234 (1990). The defendant further claims that, even if the evidence were relevant to prove identity, the judge abused her discretion in failing to exclude the evidence on the ground that its probative value was outweighed by its potential for unfair prejudice. See *Commonwealth v. Marshall*, 434 Mass. 358, 366, 749 N.E.2d 147 (2001).

[1, 2] A trial judge may not admit evidence of acts committed prior to a charged offense to prove the bad character or criminal propensity of the accused, but may admit such evidence if it is relevant to establish a common scheme, pattern of operation, absence of mistake, identity, intent, or motive. *Commonwealth v. Helfant*, 398 Mass. 214, 224, 496 N.E.2d 433 (1986). To be sufficiently probative, however, the evidence of the prior acts "must be connected with the facts of the case [and] not be too remote in time." *Commonwealth v. Cardarelli*, 433 Mass. 427, 434, 743 N.E.2d 823 (2001), quoting from *Commonwealth v. Barrett*, 418 Mass. 788, 794, 641 N.E.2d 1302 (1994).

[3] Before evidence of prior bad acts may be admitted to show identity, the Commonwealth must show that "the prior events and the circumstances of the crime charged have such similarities as to be meaningfully distinctive.... There must be a uniqueness of technique, a distinctiveness, or a particularly distinguishing pattern of conduct common to the current and former incidents to warrant the admission of evidence of prior bad acts as tending to prove that the defendant was the person who committed the crime charged." *Commonwealth v. Kater*, 432 Mass. 404, 414, 734 N.E.2d 1164 (2000), quoting from *Commonwealth v. Jackson*, 417 Mass. 830, 836, 633 N.E.2d 1031 (1994).

[4, 5] Each of these preliminary determinations is committed to the sound dis-

*Garcia,* 409 Mass. 675, 680–685, 569 N.E.2d 385 (1991). Hence, a motion to suppress the fruits of the inventory search conducted in this case would not have been successful.

[10] We likewise conclude that the defendant's trial counsel did not deprive the defendant of an "otherwise available, substantial ground of defen[s]e" by failing to obtain the presence of these two additional alibi witnesses referred to by the defendant. While both of these witnesses testified at the Middlesex County trial that they had been employed at the Ground Round restaurant in Waltham on the evening of January 14, 1998, and had seen the defendant and his wife enter the restaurant at or about 7:00 P.M. on that evening, neither of them could say definitely when the defendant and his wife had left the restaurant.³ Moreover, their testimony pertained to the Auburndale robbery only, rather than to the Brighton robbery that was at issue in the case. The testimony was also merely cumulative of the testimony of the defendant's wife, who stated not only that she and her husband had been present at the Ground Round in Waltham on the evening of January 14, 1998, but also that she had retained and brought with her to the Middlesex County trial a receipt showing that they had not paid their bill at the Ground Round until 7:57 P.M. on that evening. In view of these circumstances, we conclude that the defendant's trial counsel was not ineffective in failing to obtain the presence of these two additional alibi witnesses. See *Commonwealth v. Sarmanian,* 426 Mass. 405, 407–408, 688 N.E.2d 973 (1998) (no error where counsel did not call additional witnesses but evidence from them would have been cumulative, not dispositive); *Commonwealth v. Rodriguez,* 57 Mass.App.Ct. 368, 372–373, 782 N.E.2d 1129 (2003) (same).

*Judgment affirmed.*

*Denial of motion for new trial affirmed.*

BERRY, J. (dissenting).

The indictment being tried to the jury in this case was returned in connection with a single robbery of the Brighton Star Market. However, the transcript of the trial evidence reads as if not one, but four, robbery offenses were on trial. The other three robbery offenses were the subject of separate indictments. See *Commonwealth v. Delong,* 60 Mass.App.Ct. 122, 123 & n. 1, 799 N.E.2d 1267 (2003) (*Delong I*).¹ Notwithstanding that, the evidence concerning the other three robbery offenses held center stage for 244 of the 443 pages of the transcript for the Commonwealth's case-in-chief, consumed fifty percent of the time for introduction of the prosecution's direct case, and predominated in the exhibits admitted—of the forty-five exhibits admitted, thirty-one were from the other robbery offenses.

As the majority opinion states, "[t]he defendant's defense was misidentification." *Ante* at 535, 803 N.E.2d at 1278. However, if the prospect of a misidentification defense as to the Brighton robbery had any chance of creating a reasonable doubt, that chance was snuffed in an unfair manner by the overwhelmingly and disproportionately prejudicial way in which the other bad act evidence was introduced from the trilogy of separately charged robbery offenses at stores in the Auburndale, Chestnut Hill, and Newtonville sections of Newton. "[T]he defendant's chances of obtaining a favorable jury verdict were not glowing but neither were they hopeless." *Commonwealth v. Adams,* 374 Mass. 722, 729, 375 N.E.2d 681 (1978). Accordingly, I dissent.

The disproportionate manner in which this other robbery evidence would be introduced was heralded in a prosecutorial prediction, just before trial began, that the evidence concerning the to-be-tried Brighton robbery would be the lesser part of the Commonwealth's case.

PROSECUTOR: "I would think four days [for trial]. Some of that is, obviously, depending on the Court's ruling on the prior bad acts motion, because there were a series of three other robberies which the defendant committed. *Essentially, it would be a mini trial on those three. My case [the Brighton robbery] would be the smallest part of the* [*Delong I*] *case.*"

1. The separate indictments were returned in Middlesex County for the Newton-based robbery offenses, i.e., the Auburndale and Chestnut Hill Star Market robberies and the Newtonville Star Market attempted robbery. The Newtonville case was severed. The other two robberies were tried before this Brighton case was tried. Convictions for unarmed robbery in the Auburndale and Chestnut Hill cases were affirmed by this court. See *Commonwealth v. Delong,* 60 Mass.App.Ct. 122, 137, 799 N.E.2d 1267 (2003) (*Delong I*). See further discussion, *infra.*

3. We recognize that one of the witnesses "estimated" that the defendant and his wife did not leave the restaurant until 8:45 or 9:00 P.M., and that this testimony might have tended to show, at the least, that the defendant could not have been the individual shown on the videotape taken at the Brighton store at 8:15 P.M. on the evening of January 14, 1998, whom Geannaris testified appeared to be wearing the same clothing and have the same physique as the individual shown on the videotape that was made of the robbery of the Auburndale store occurring later that evening. This was not a central issue in the case, however. Indeed, the prosecutor did not refer to the January 14 videotape taken at the Brighton store during her closing argument

and then there would be those other witnesses on the prior bad acts." (Emphasis added.)

Notwithstanding this proffered prospect of mini-trials on the separately charged offenses, the judge ruled that the evidence of the three other robbery offenses would be admitted "on the issue of identification." But so much evidence from the other robberies was introduced in the Brighton case—too much evidence I would say—that, from all that appears in the record, it was as if the identification of the defendant in the Auburndale, Chestnut Hill, and Newtonville Star Market robbery offenses were also issues to be determined by the jury in deciding whether the defendant committed the Brighton robbery. That the other bad act evidence was introduced in such a manner that the Brighton jury was, in effect, called upon to assess the identification of the defendant as the actor in the other robbery offenses is a strange evidentiary construct, given that this other robbery evidence was admitted in the first place for the limited purpose of aiding the jury's determination of whether the defendant was the perpetrator of the Brighton robbery.

Even accepting, as I do, that identification is a valid predicate for the probative element of the admission of other bad acts,² in this case, fundamental unfairness resulted because the ruling on admissibility omitted the required second stage of judicial analysis that should precede the admission of this kind of evidence—that is, judicial weighing of whether the danger of unfair prejudice substantially outweighs probative value.³ Thus,

2. The formulation of this evidentiary doctrine is that other prior and subsequent bad acts of a defendant may be introduced "to show a common scheme, pattern of operation, absence of accident or mistake, identity, intent, or motive." *Commonwealth v. Helfant,* 398 Mass. 214, 224, 496 N.E.2d 433 (1986). See *Commonwealth v. Cardarelli,* 433 Mass. 427, 434, 743 N.E.2d 823 (2001).

3. There are "two stages of evidentiary analysis to be constructed and considered prior to

**1286** Mass.   **803 NORTH EASTERN REPORTER, 2d SERIES**

ly rather than as one part of a very long trilogy, are issues that need not be unraveled. I would only note that in the trial underlying *Delong I*, evidence of the Newtonville attempted robbery alone was admitted, evidence of the Brighton robbery was excluded, and the convictions were affirmed. See note 4, *supra*.

As previously noted, in all three instances, the record was further supplemented by admission as exhibits of the supermarket robbery videos, still shots, and photographic spreads from the Auburndale, Chestnut Hill, and Newtonville robbery offenses. Using these exhibits, Anderson published to the jury what were described as compiled "comparisons" (taken from these photographic exhibits, it appears—the record is not entirely clear) to show the jury potential similarities for them to consider in determining whether the defendant was the identified committer of the three separately charged offenses *and* the Brighton robbery.

Given the problematic way in which the other bad act identification procedures and photographic spreads were introduced in the trial record, and the disproportionality

5. There were flaws in the instruction. First, and perhaps most importantly, the instruction did not charge that the jury could not consider the defendant's commission of the other robberies as proof that the defendant had committed the Brighton robbery. Furthermore, the instruction omitted the Newtonville evidence, referring to only the Chestnut Hill and Auburndale robberies. There was also an inconsistency in setting forth the litany of all potential purposes for the admission of other bad act evidence, given that the evidence was to be limited to identification alone. Finally, there was an internal inconsistency in the phraseology of the instruction, which states initially in the negative, and, then, in the positive, that the other bad acts were substantive evidence that the defendant had committed the other robberies.

"You've also heard evidence of robberies of the Star Market at Chestnut Hull [*sic*] and Auburndale. Let me explain to you that the

of the evidence relating to these other crimes, the judge's generic and abbreviated instruction to the jury that they were to consider the evidence of the robberies at the Chestnut Hill and Auburndale Star Markets "solely on the limited issue of identification" did not cure the prejudicial and unfair effect.[5]

"It is reasonable for us to be confident that in most cases limiting instructions accomplish their intended purpose. Nevertheless, in cases like the instant one, where the evidence subject to limitations has an extremely high potential for unfair prejudice, we have a duty to be skeptical as to the effectiveness of limiting instructions. They have been characterized by Judge Learned Hand as 'the recommendation to the jury of a mental gymnastic which is beyond, not only their power, but anybody's else.' *Nash v. United States*, 54 F.2d 1006, 1007 (2d Cir.1932). "The naive assumption that prejudicial effects can be overcome by instructions to the jury ... all practicing lawyers know to be unmitigated fiction.' *Krulewitch v. United States*,

defendant is not charged with those robberies. As I said, you've heard mention of those other robberies, and you are not—you may not take that as substantive proof that the [defendant] committed those other robberies, nor may you consider it as proof that the defendant has a criminal personality or bad character, but you may consider it solely on the limited issue of identification. You may not consider this evidence for any other purpose. Specifically, you may use it to conclude that the defendant committed the other robberies. This type of evidence is not admissible to demonstrate the defendant's bad character or propensity to commit the crimes charged. But if not too remote in time, it may be admissible to show motive, opportunity, state of mind, preparation, plan or scheme, pattern of conduct, relationship between a defendant and a victim, knowledge, identification, or absence of mistake or accident."

---

**COM. v. DELONG**   Mass. **1287**
Cite as 803 N.E.2d 1274 (Mass.App.Ct. 2004)

336 U.S. 440, 453 [69 S.Ct. 716, 93 L.Ed. 790] (1949) (Jackson, J., concurring)." *Commonwealth v. DiMarzo*, 364 Mass. 669, 681, 308 N.E.2d 538 (1974) (Hennessey, J., concurring).

When the Commonwealth rested, the mini-trials of the Newton-based robberies and attempted robbery held predominance, and as the prosecutor had predicted, the actual case on trial was "the smallest part of the case." The overshadowing of the other bad act evidence, which was taken to the extreme, leaves me unable to say that the mass of evidence adduced concerning the other robberies and the in-court and out-of-court identifications by witnesses to these other robberies did not give rise to prejudicial error, and "did not influence

6. Defense counsel had opposed the introduction of the other robbery evidence in the hearing on the Commonwealth's motion in limine

the jury, or had but very slight effect ... [and] that the judgment was not substantially swayed by the error." *Commonwealth v. Flebotte*, 417 Mass. 348, 353, 630 N.E.2d 265 (1994), quoting from *Commonwealth v. Peruzzi*, 15 Mass.App.Ct. 437, 445, 446 N.E.2d 117 (1983). Rather, from my review of the trial record, I believe "it is impossible to conclude that substantial rights were not affected." *Ibid.*[6] Therefore, I dissent.



and preserved objection to its admission. Hence, the prejudicial error standard applies.

ATTACHMENT 3

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY) JOSEPH DELONG vs
BERNARD BRADY, ACTING SUPERINTENDENT, OLD COLONY CORRECTIONAL CENTER

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).

    ___ I.   160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

    ___ II.  195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,       *Also complete AO 120 or AO 121
             740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.         for patent, trademark or copyright cases

    ___ III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
             315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,      05  11334 WGY
             380, 385, 450, 891.

    _X_ IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
             690, 810, 861-865, 870, 871, 875, 900.

    ___ V.   150, 152, 153.

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.
   NONE - NOT APPLICABLE

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?
   YES ☐   NO ☒

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST? (SEE 28 USC §2403)
   YES ☐   NO ☒
   IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?
   NOT APPLICABLE   YES ☐   NO ☐

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC §2284?
   YES ☐   NO ☒

7. DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).
   YES ☒   NO ☐

   A. IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?
      EASTERN DIVISION ☒   CENTRAL DIVISION ☐   WESTERN DIVISION ☐

   B. IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING GOVERNMENTAL AGENCIES, RESIDING IN MASSACHUSETTS RESIDE?
      NOT APPLICABLE
      EASTERN DIVISION ☐   CENTRAL DIVISION ☐   WESTERN DIVISION ☐

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME   JOSEPH DELONG, pro se   *Joseph DeJong*
ADDRESS   OLD COLONY CORRECTIONAL CENTER, 1 ADMINISTRATION RD., BRIDGEWATER, MA 02324
TELEPHONE NO.   NONE - NOT APPLICABLE - PRISONER PETITION

(Att3Cover sheet local.wpd - 11/27/00)

**JS-44 (Rev. 3/99)**

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
JOSEPH DELONG

## DEFENDANTS
BERNARD BRADY, ACTING SUPERINTENDENT

(b) County of Residence of First Listed Plaintiff  **PLYMOUTH**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
JOSEPH DELONG, pro se
OLD COLONY CORRECTIONAL CENTER
ONE ADMINISTRATION ROAD, BRIDGEWATER, MA

Attorneys (If Known)
THOMAS F. REILLY, ATTORNEY GENERAL
ONE ASHBURTON PLACE, 20TH FLOOR
BOSTON, MA 02108

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY / PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ Medicare Act | ☐ 340 Marine / PERSONAL PROPERTY | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | LABOR | SOCIAL SECURITY | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization A |
| REAL PROPERTY | CIVIL RIGHTS | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | PRISONER PETITIONS | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☒ 530 General | ☐ 740 Railway Labor Act | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | FEDERAL TAX SUITS |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | ☐ 871 IRS—Third Party 26 USC 7609 |
| | | ☐ 555 Prison Condition | | ☐ 890 Other Statutory Actions |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
THIS ACTION IS BROUGT PURSUANT TO 28 U.S.C. § 2254 TO ADDRESS THE VIOLATION OF PETITIONER'S RIGHTS UNDER THE FOURTH, FIFTH, SIXTH & FOURTEENTH AMENDS

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ NOT APPLICABLE
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): NONE
JUDGE NOT APPLICABLE
DOCKET NUMBER NOT APPLICABLE

DATE 6/20/05
SIGNATURE OF ATTORNEY OF RECORD  Joseph DeLong

FOR OFFICE USE ONLY
RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____